*1489 The opinion of the court was delivered by
Parlance, J.
The relators presented to the judge of Division A of the Oivil District Ooart for the parish of Orleans, a petition in which they averred substantially that they are citizens, tax-payers and prop - erty owners in the radius comprised between Oanal, Bourbon, Bienville streets and Exchange alley, in New Orleans; that Otto H. Sehoenhausen is the proprietor of a concert hall or variety saloon, situated at the corner of Royal and Customhouse streets, in New Orleans, in which concert hall intoxicating liquors are sold; that said Schoenhausen has no legal permit to operate said concert hall, nor has he complied with the municipal ordinance relative thereto, and especially with Ordinance 7012 O. S. in so far as obtaining from the Mayor and City Council the permission to set up a place where liquors are retailed; that certain stated acts of misconduct and certain improprieties are there permitted, and that the noise which comes from said concert hall is of itself an insupportable nuisance; that all of said acts are contrary to law, and subversive of good order and public morals ; that in consequence of the operation of said concert hall respectable persons shun the neighborhood after nightfall, thereby causing considerable damage to the present relators and to other persons conducting restaurants, hotels, stores, etc. They alleged irreparable injury to an amount exceeding $2500 to each; they prayed for an injunction restraining said Schoenhausen from conducting or operating said concert hall.
The judge of Division A of said Oivil District Oourt granted the injunction on a bond of $2000, and the suit was allotted to Division B of said court.
The defendant in the injunction suit excepted that the petition discloses no cause of action, and that the plaintiffs in the suit are without right to stand in judgment and have no authority to represent the State or. the city of New Orleans in the premises. The defendant, reserving his exceptions, also answered by a general denial, admitting that he is the owner of the concert saloon in question. He asserted that he had obtained licenses from the city of New Orleans and the State, and a permit from the city of New Orleans prior to the issuance of the injunction; and that therefore said writ could not lawfully issue in advance of trial on the merits to suppress the same as a nuisance. He further asserted that his establishment is situated in that part of New Orleans where such establishments *1490 have existed and been carried on for years without let or hindrance from the plaintiffs or others in the vicinity; that plaintiffs are estopped by their laches, silence and inaction, and that they have damaged him in a large amount by their illegal and malicious action.
Subsequently the present relators filed an amended petition in the injunction suit, in which they averred more in detail their causes of complaint, and alleged more fully the injury to their occupations and to the rental value of their property caused by the operation of the concert hall in the manner they described; and they alleged that the concert hall is not only a common public nuisance but also a private nuisance. They alleged that neither the Legislature nor the city of New Orleans has the power to license or permit the conduct of the immoral establishment described by them, or any immoral establishment, and that any act of the Legislature or ordinance of the city of New Orleans authorizing the licensing of such an establishment is unconstitutional. They attacked specially the constitutionality of any act of the General Assembly licensing a concert saloon in which certain dances are performed. They averred that if the Legislature had the right to license such an establishment, Schoenhausen has not obtained the consent of the majority of the property holders and residents within a radius of 300 feet from said concert hall.
The State, through the Attorney General, intervened in the injunction suit, adopting the averments of the petitions filed by the present relators (except as to private interests), and alleged that said concert hall is a public nuisance, contrary to good morals and public order, and that Schoenhausen has not obtained the consent of a majority of the property owners and residents within a radius of 300 feet.
The lower judge having refused to dissolve the injunction on bond, a rule was issued to the present relators to show cause why the injunction should not be so modified as to permit Schoenhausen to open and carry on his business of concert saloon and bar-room “ in conformity to and in obedience to the laws of the State and ordinances of the city of New Orleans and forbidding him from carrying on said business in violation of the laws of the State and the ordinances of the city of New Orleans.” In the rule Schoenhausen averred that he had paid his State and city licenses and annexed the same, amounting to $6000, for 1893.
*1491 The present relators excepted to this rule, on the ground that it is unauthorized by law and that it is an attempt to anticipate the trial on the merits. The lower judge overruléd this exception, and after hearing the rule he modified the injunction by enjoining Schoenhausen “ from carrying on his bar-room and concert saloon in any manner violative of the laws of the State or the ordinances of the city of New Orleans, and forbidding him from permitting disorderly persons to congregate therein or otherwise creating a nuisance in his said establishment injurious to the plaintiffs.”
In his opinion, on modifying the injunction, the lower judge said substantially that the injunction did not issue as a matter of right under Art. 298, C. P., but under Art. 303, C. P., which vests in the judge a discretion to determine whether the injurious acts set forth entitle a complainant to an injunction; and that as the judge, in cases arising under Art. 303, C. P., has a discretion in allowing or refusing an injunction before trial, he is, in like manner, vested with discretion to modify a preliminary injunction which improvidently issued and is used to deprive a litigant of a legal right to be heard in court or is used to finally decide a ease before trial. The lower judge further said that by the charter of the city of New Orleans, Act 20 of 1882, Sec. 8, and the license law of the State, Act 150 of 1890, concert saloons are authorized and licensed and that the Supreme Court has decreed-the validity of the acts of the Legislature imposing a license upon those establishments and that those acts have been recognized and enforced by the Supreme Court. He further said that Act 69 of 1888, requiring the consent of a majority of the property owners and residents within a radius of 300 feet from the concert saloon, has been declared null and void at the suit of the Attorney General against McCuen et al., No. 24,711 of the Civil District Court. That the writ should not have issued before trial, closing up said establishment, and that before trial the manner in which the establishment is conducted may be controlled by injunction so as not to cause a nuisance.
The plaintiffs in the injunction suit prayed for a suspensive appeal from the order modifying the injunction, which appeal was refused by the lower judge. Thereupon, the plaintiffs applied to this court for writs of mandamus, prohibition and certiorari.
The lower judge answers the order issued from this court by asserting the validity of his action, substantially for the reasons stated by him on modifying the injunctiqn.
*1492 Schoenhausen answers, averring, among other things, that the petition for injunction discloses no irreparable injury; that the amended petition and the intervention of the Attorney General have never been served on him and were filed after his exceptions and answer; that the supplemental petition, changing the issues, should not have been allowed in an injunction suit; that the judge a quo had the right to take judicial notice of the suit brought by the State against McOuen et al.; that the bar-room mentioned was established in compliance with Ordinance 7012 and relators’ statement to the contrary is false; that, moreover, the State laws licensing concert saloons authorize the carrying on of a bar-room, as appears fully from decisions of the Supreme Court; that by its charter, the city of New Orleans is authorized to suppress all nuisances and its council has express power to close houses for retailing alcoholic liquors when the public safety may require; that a summary process being provided by statute for the abatement of all nuisances by the city, the court should not interfere by injunction; that by the State law, the carrying on of concert saloons and bar-rooms is authorized on payment of a license, which he has paid to the State, as well as another to the city; that said business being legal, can not be abated as a nuisance at the suit of private individuals; that for any injury suffered by the relators in the premises, they have their action in damages, but no right to close up respondent’s establishment in advance of the trial on the merits. He quotes statutes and decisions in support of his answer.
In this case, when the petition for injunction was presented to the judge, he might have refused to sign the order closing the establishment, leaving the applicants to seek such- remedy as the law might have afforded. Or the judge might originally have granted the order which is now complained of. An ex parte order for the issuance of an injunction is not a judgment. If the judge should discover that it improvidently issued, that it was too broad and in excess of his power, it seems that he should have the right to correct his error. State ex rel. Leche, District Attorney, vs. Fowler, 42 An. 147; State ex rel. Waterworks vs. Levy et al., 36 An. 944.
It is urged by the respondent judge that if such a power does not exist a litigant might suffer injury, although the judge whose order was causing the injury might, an instant after rendering it, realize and acknowledge that it was improvident. But it is not necessary *1493 for us to pass on this point to decide the matter presented for adjudication.
This court has held distinctly, and it is settled, that in the matter of the dissolution of an injunction, the allegation of irreparable injury, set out in the petition, is not conclusive. Slaughterhouse Company vs. Police Jury, 32 An. 1192; Orleans Slaughterhouse Company vs. Butchers’ Union Slaughterhouse Company, 33 An. 930; Schmidt vs. Foucher, 37 An. 175; State ex rel. Sterken vs. Judge, 37 An. 826; State ex rel. May vs. Davey, 39 An. 992.
The relators sought and obtained, for the time being, the immediate abatement of the alleged nuisance, and they prayed for and obtained a complete reversal of the status-of Schoenhausen’s business.
This court has held that as a general rule, subject to exceptions, the mandatory writ of injunction will not issue ex parte before trial. Black vs. Good Intent Towboat Co., 31 An. 487; Barrett vs. City, 33 An. 544.
This court has also held that a preliminary injunction will not be used to oust a person in possession. N. & N. E. R. R. Co. vs. N. O., Terre Bceufs & Lake R. R. Co., 36 An. 561; State vs. Lyon, 41 An. 952.
Mr. Pomeroy states the. equity jurisprudence to be as follows:
“This term (mandatory injunctions) in strictness is confined to interlocutory or preliminary injunctions. Where on the final hearing in a case of nuisance or interference with easements, or continued trespass analogous to trespass, the relief is granted compelling the defendant to remove his obstructions or erections, and to restore the plaintiff to his original condition and thereby to end the wrong, the remedy is in fact an ordinary decree for abatement, and is in ho proper sense an injunction of any kind. But in these and similar cases the preliminary injunction, while purporting to simply restrain the wrong, and while negative in its terms, may be so framed that it restrains the defendant from permitting his previous wrongful act to operate, and therefore virtually compels him to undo it by removing the obstructions or erections, and by restoring the plaintiff to his former condition. Such an injunction is termed mandatory, and resembles in its effect the restorative interdict of the Roman law. It is used where the injury is immediate, pressing and irreparable, and clearly established by the proofs and not acquiesced in by the *1494 plaintiff; since an order directly compelling an abatement of the nuisance or a removal of the obstruction can not be made upon interlocutory motion. The rule is fully established, at least by the English decisions, and is not controverted by American authority, that in such eases, where the facts are clearly established and the injury is real and the plaintiff acted promptly upon his acquiring knowledge of the defendant’s proceeding, a preliminary mandatory injunction may be granted, although the act complained of was fully completed before the suit was commenced. It should be observed, however, that no other equitable remedy is more liable to be defeated by acquiescence or by delay on the plaintiff’s part from which acquiescence may be inferred.”
Mr. High, in his work on injunctions, says: “Mandatory injunctions are seldom allowed before a final hearing, though they may be granted on interlocutory applications. And while a court of equity is. always reluctant to grant a mandatory injunction upon an interlocutory application and before a final hearing, it may yet do so in an extreme case when the right is clearly established and the invasion of the right results in serious injury.”
The establishment in question is one of a kind licensed by the law of the State. This court has, in several cases, passed upon matters relative to the licenses imposed upon such establishments. The petition for injunction sets out a considerable volume of matter, en pais, as to the manner of conducting the particular establishment in question.
Cases may unquestionably arise in which the courts would have the power to prostrate a nuisance before trial. Yet, when the matter involves the absolute closing up, in advance of any hearing on the merits, of a business apparently authorized by law, it is manifest that the courts will act with caution and only in clear cases. The business of no one would be, safe if, upon an ex parte charge that it is a nuisance and before he had an opportunity to disprove, a court, without first being satisfied that it was a case requiring an extraordinary remedy, were to close the business. •
The case presented, circumstanced as it is, does not appear to us to be such a one as warranted the rendering in limine and ex parte of a virtual decree of abatement. We distinctly say, however, that we are not to be understood as in any manner expressing or intimating an opinion as to the merits. The question for us now to decide is *1495 whether the modification of the order of injunction will cause irreparable injury to the relators, and whether for that reason they are entitled to a suspensive appeal from that order. We mean only that after considering the facts stated in the petition for injunction, the order modifying the injunction and the law, we are satisfied that no irreparable injury can result to the relators from the order. We do not see how, during the time which will elapse until the case comes to us on appeal, the relators can be irreparably injured by the conduct of the business in accordance with the laws of the State, the ordinances of the city, and so as not to cause a nuisance to the relators. We agree with the district judge that, pendente lite, the alleged nuisance may be properly controlled and regulated under the modified order.
The relators are not entitled to the relief sought by them.
The court being of opinion that the relators have not shown sufficient grounds for the allowance of the writs of mandamus, prohibition and certiorari herein prayed for, and that the relators are not entitled to said writs, fctie application for the same is hereby refused, and the provisional order herein granted is set aside.