NICHOLLS, J.
On the 19th of February, 1907, Edward T. Lewis filed a petition in the district court for the parish of St. Landry, in which he alleged that his place of residence fronts on Landry street, between Union and Walnut; that across said Landry street, in front of his home, James L. Sandell and Harry D. Powell, composing the firm of Sandell & Powell, and residents of the parish of Yer-non, La., have recently purchased a lot of ground upon which they propose to erect a livery, feed, and sale stable, fronting on said Landry street; that petitioner is informed and believes, and so alleges, that since said *853 purchase the said Sandell & Powell have entered Into a contract with Charles Thibodeaux, of your said parish, to erect on their said lot a sale, livery, and feed stable fronting on Landry street, 50 feet front by 100 feet in depth, the same to be built of wood; that petitioner immediately upon learning of these facts, and before any expense had been incurred by the said contractor, informed him that, if he attempted to erect said stable, he, petitioner, would endeavor by judicial proceedings to prevent the same. The said Thibodeaux informed petitioner that he notified the said Sandell & Powell of petitioner’s expressed intention to prevent the building of the said stable by an appeal to the court, and petitioner further avers that said Sandell & Powell were notified of this by the said Thibodeaux before leaving this city. The petitioner further represents that this part of said city is now, and has been for many years, used exclusively for residence purposes; that the said stable, if erected, will be immediately in the rear and in close proximity to the Episcopal Church, and the rectory belonging to said church and now occupied by the minister of that church and his family; that in this climate, according to the uniform experience of those living near establishments of this character, they are a nuisance, for the following reasons:
That they become the breeding place for swarms of house flies during the summer months that invade the houses of all persons living in the neighborhood; that they became a harbor for rats, and a radiating point for noxious and offensive odors arising from the keeping of animals inclosed therein at all hours of the day and night; that no amount of care ever has or can prevent these annoyances and vexations, which all experiences teach result from such establishments; that large quantities of inflammable material are kept stored in such buildings, thereby increasing the danger of fire, and subjecting contiguous property holders to greater risk of loss; that livery stables are the resort often of rough and immoral persons, who, with the employes, indulge frequently in rude and indecent language, which is offensive to decent people; that petitioner and all the residents in the locality above named would be subjected to the annoyance and vexation of house flies, rats, vile odors, of being compelled to hear frequently indecent language, and be further subjected to increasing danger by fire. He further declares that such a business, located as stated, would, for the foregoing reasons, seriously impair the value, either for sale or rent, of not only his property, but that of all the residents in the immediate neighborhood, and thereby damage him and them to the extent of one-half of the present value of their property; that the value of petitioner’s property that will-be affected by this establishment is at the present time $5,000; that, while the law as laid down in article 667 of the Civil Code permits the owner of property to do with his estate whatever he pleases, that article further provides that:
“He cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
He further avers that, notwithstanding the notification 'given to Charles Thibodeaux, as above stated, the said Charles Thibodeaux is now, and has been for some time past, engaged in the actual construction of said livery, sale, and feed stable, and, although petitioner would have the right under the law to obtain a preliminary writ of injunction, he has no desire to resort to this harsh process, preferring to have the issues presented in this petition decided after full hearing of the parties.
And to this end he therefore prays that the said James M. Sandell, Harry B. Powell, and Charles Thibodeaux be duly cited to answer this petition, and that, after due hearing thereof, there be judgment in favor of *855 plaintiff enjoining, restraining, and prohibiting them from proceeding further in the erection of the livery, sale, and feed stable as hereinabove set forth. And, further, for costs and for general relief.
On the 21st of February, 1907, plaintiff filed a supplemental petition, in which he alleged that on the 19th.of February, 1907, he filed a petition to this honorable court, the allegations of which petition he reiterates and reaffirms. That, notwithstanding the service of the petition upon the said Charles Thibodeaux in person, and notwithstanding verbal remonstrances made to the said Thibodeaux, contractor of the said defendants and acting as such contractor, yet the said Thibodeaux, instead of awaiting the termination of said suit, is going on with the work of erecting the livery, sale, and feed stable in despite of the said suit and of the remonstrances of petitioner to the contrary notwithstanding; that a writ of injunction is necessary to protect petitioner’s rights in the premises.
In view of the premises, he prays that writs of injunction may issue herein, inhibiting and prohibiting the said Charles Thibodeaux and the said James M. Sandell and Harry D. Powell, composing the firm of Sandell & Powell, from further continuing the work of erecting the said stable which the said Thibodeaux, contractor aforesaid, is at present engaged in; for citation to the said Charles Thibodeaux and- the said James M. Sandell and Harry D. Powell to answer thereto; that, after the legal delays and due proceedings had, there be judgment in favor of the said petitioner and against the said James M. Sandell and Harry D. Powell and Charles Thibodeaux, and forever inhibiting and prohibiting them from constructing the stable herein sought to be built and erected as they are at present engaged in doing. Petitioner reiterating and reaffirming all of the allegations contained in his original petition, he l>rays roi- all other decrees and orders necessary in the premises and for general relief.
Petitioner was judge of the district court of which the parish of St. Landry formed a part. He verified the last petition by affidavit, and therein declared that, being interested in the suit and of necessity recused, the granting of the injunction vel non was referred to the clerk of the district court for action.
The district clerk took cognizance of the petition, and ordered a writ of injunction to issue upon petitioners executing a bond conditioned according to law in the sum of $500.
On the 23d of February, the defendant Thibodeaux filed a petition in the district 'court, in which he alleged that the writ of injunction sued out had issued improvidently and without warrant of law or fact, and should be dissolved and set aside. He prayed accordingly, and for damages. On the same day, the district judge recused himself, and referred the case to the judge of the Eighteenth judicial district of Louisiana.
On the 25th of February, the defendants Sandell & Powell answered, pleading the general issue, setting up defenses, and praying for the dissolution of the injunction, with damages. On the 28th of February, Thibodeaux, Sandell, and Powell petitioned the court to he permitted to bond the injunction, and that they be allowed to continue the erection of the stable.
On the 5th of March, the rector of the Church of the Epiphany and a large number of members of that church intervened in the case and opposed the erection of the stable on the lot adjoining their place of worship, for the reasons set out in the petition of Judge Lewis, whose allegations they adopted as their own. They opposed, for reasons assigned, the dissolution of the injunction on bond, and urged that it should be maintained until a trial of the cause on the merits. In the event the court should determine *857 •to allow the bonding, they prayed that it be bonded only upon defendants giving' bond under article 867 of the Civil Code.
On the 6th of March, the motion to bond was argued before the judge of the Eighteenth judicial district, and submitted for ■decision on the face of the papers. The district judge rendered judgment to the effect that the injury alleged was not clearly apparent, and therefore not irreparable, and the injunction should be dissolved on bond; the defendants, however, to conduct their business in a legal way, keep their stable ■clean, comply with all. legal, municipal ordinances, and take due precautions against Tre. That later, after the building was completed and the business in operation, plaintiffs could then protect themselves by proper, legal proceedings, if necessary. The judge .allowed the injunction to be dissolved on bond upon defendants furnishing bond in the sum of $500. Plaintiff made application for a suspensive appeal from the judgment, which the trial judge refused to grant. The present application was then made, and' a rule nisi served upon the trial judge to .show cause why the writs applied for should not be granted. He has answered. In his .answer, after pleading the general issue, the trial judge states:
“That he had refused the application for a •suspensive appeal, because the affidavit of plaintiff was based mainly upon his belief of what would transpire in the future, and that he had no right to assume in advance that a lawful business, not a nuisance per se, would be con■ducted in any unlawful and injurious way, and that his statement that irreparable injury would result was a mere legal conclusion founded on what he believed might happen in the future. ■(2) That there was no certainty that any injury at all would result from the erection and con■duct of said livery, feed, and sale stable, and that on the face of the papers no danger was imminent. (3) On the further ground that ■courts should never interfere with the just exercise of any property rights, unless there is just cause to believe that the party applying for and obtaining an injunction would be irreparably injured; that he has diligently examined, since the trial of this motion, nearly every decision in the state of Louisiana bearing upon the question of enjoining nuisances, and believes that the law of this state is that no prospective nuisance can be enjoined, unless the matter complained of is a nuisance per se, and it has been repeatedly held in other jurisdictions that a livery stable is not a nui saneé per se, and in this state our Supreme Court has also held the same doctrine. The petition of plaintiff seems directed more at the manner in which he supposes the business is to be conducted than at the erection of the building itself. The textbooks and the authorities are clear to the effect that a preliminary injunction will not lie in such eases as the one at bar. The allegations of the petition seem to be made more to bolster the claim of plaintiff as to the depreciation of his property, which he fixes at $2,500, and are all seemingly made for that purpose alone.
“Article 867, Rev. Civ. Code, authorizes the judge to allow the continuance of works upon defendant giving bond, and article 669, Rev. Civ. Code, provides that, where works or materials for any manufactory or operation causes an inconvenience to those in the same neighboring houses by dust, smoke, or nauseous smell, their sufferance must be determined by the rules of the police or the customs of the place. In Town of Crowley v. West, 52 La. Ann. 527, 27 South. 53, 47 L. R. A. 652, 78 Am. St. Rep. 355, the Supreme Court held that a livery stable was not a nuisance per se, and in Dubos v. Dreyfous, 52 La. Ann. 1121, 27 South. 663, the court held that a livery stable could not be suppressed, but, if found to be a nuisance after evidence given, that certain regulations should be complied with by the parties controlling same, following the rule announced in the case of State ex rel. Violett v. Judge, 46 La. Ann. 78, 14 South. 423, and which rule respondent attempted to follow in bonding the injunction, by prescribing that the stable, when conducted as such, should be kept in a cleanly and orderly maimer and due precautions taken to prevent danger from fire. In the case of Bell v. Riggs & Bro., 38 La. Ann. 555, the court expressed itself in terms which seem to fit the present case like a glove:
“ ‘An injunction will not lie against a nuisance which is purely prospective, the danger from which is not imminent.’,
“In Blanc v. Murray, 36 La. Ann. 162. 51 Am. Rep. 7, while the court in its original opinion seemed to take a position at variance with the decision in the later case just quoted, yet, in the rehearing, the court confined itself to the abatement of the nuisance, permitting the business to be conducted, provided certain precautions such as were prescribed were followed.
“The American & English Encyclopædia, vol. 21, p. 704, says that an injunction should be granted only when the act or thing apprehended will .become a nuisance per se. Complainant must show clearly that the act or thing sought to be restrained will become a nuisance; that it will result in substantial injury, to him, irreparable in damages or irremedial at law; that *859 the injury will be the natural or inevitable consequence of the act sought to be restrained; and that danger is imminent. Id. pp. 706, 707.
“It will not lie to restrain defendant in pursuing a lawful business. State v. American Cotton Oil Trust, 40 La. Ann. 8, 3 South. 409. Nor can the ordinary use of property be interfered with by assuming that it is a nuisance per se. State v. Marshall, 50 La. Ann. 1176, 24 South. 186. The operation of a whisky distiller is not a nuisance per se, and cannot bo enjoined: Lewis v. Behan, 28 La. Ann. 130.
“Turning- to the text-books, we find that Mr. Woods, on Nuisances ([3d Ed.] § 100), holds that, generally, nuisances cannot be abated until they actually exist, and, in regard to the exposure of other buildings to danger from fire, the hazardous character of the business must be unmistakable, the danger imminent, and the use of such an extraordinary and hazardous character as to leave no doubt of the nuisance. Id. vol. 1, §' 148. Injunctions will seldom be granted against threatened nuisances until there is no doubt of injurious results. Id. vol. 2. §§ 796-798. In Shiras v. Olinger, 50 Iowa, 571, 32 Am. Rep. 138, with authorities quoted in note, the court holds that livery stables are not nuisances per se, and that injunction will not be granted to prevent their erection in cities; and to the same effect is Keiser v. Lovett, 85 Ind. 240, 44 Am. Rep. 10. In Rounsaville v. Rohlheim, 68 Ga. 668, 45 Am. Rep. 505, the court holds that a private stable in a city is not necessarily a nuisance, and the right to build one will not be denied upon the mere supposition that it will become one. See, also, High on Injunctions (3d Ed.) vol. 1, 743, 744, 778. See, also, as to the right to erect a stable near a church building, St. James Church v. Arrington, 36 Ala. 546, 76 Am. Dec. 332. Also Shivery v. Streeper, 3 South. 865, 24 Fla. 103. Our Supreme Court says in Darcantel v. People’s Slaughter House & Refrigerating Co., 44 La. Ann. 645, 11 South. 239, that the general dictum to the effect that a party can always prevent, by injunction, the doing of an act which would give him a claim for damages, obviously refers to and must be confined to unlawful acts.
“Ringing of church bells has been held not to be a nuisance. State ex rel. Denis v. King, 105 La. 731, 30 South. 101. There are numerous other cases in this state declaring what are nuisances and what are not. Laundries are not nuisances per se. City of Shreveport v. Robinson, 51 La. Ann. 1314, 26 South. 277. Liquor saloons are not nuisances per se. De Blanc v. Mayor, etc., of Town of New Iberia, 106 La. 680, 31 South. 311, 56 L. R. A. 285. See, also, City of New Orleans v. Lagasse, 114 La. 1055, 38 South. 828. Injunction prohibiting public works can be "bonded when the damages are consequential. McMahon v. St. Louis, A. T. R. Co., 41 La. Ann. 827, 6 South. 640.
“After a careful examination of all the various state and other authorities, respondent concluded that a lawful business not yet in existence and not a nuisance per se could not be enjoined on the face of the papers until evidence had been adduced to establish same; but, on the _ contrary, where the business was conducted in such a way as to be a nuisance per se, it could be enjoined in such a manner as to compel its conduct in such a way as not to injure others materially, or when the business itself was a nuisance per se, then it could be enjoined. Respondent submits that no such right exists in the present case; that the plaintiff can,not assume as a matter of law that the livery stable will be conducted in an improper manner ; that he cannot know in advance in wliat way the same will be conducted, and he cannot safely aver that he will suffer irreparable injury, because the injury will only arise when the stable is conducted in such a manner as to become a nuisance, and only then. While respondent recognizes that the erection of a livery stable in the near vicinity of the plaintiff will prove a matter of annoyance, yet persons living in towns on small properties must suffer some inconvenience to offset the many advantages arising from their residence therein; and, while respondent regrets that the livery stable is to be .erected near the church of the interveners and near the residence of the plaintiff, yet, as a matter of law, respondent recognizes that the defendants are entitled to the protection of the law in the enforcement of their just rights, and that they cannot be deprived thereof in the manner herein attempted. Believing, as respondent does, that no such sweeping injunction should have been issued, and believing, furthermore, from the restrictions imposed by him m the conduct of the defendants’ business, requiring it to be conducted in a proper and lawful manner, that no irreparable injury will result to the plaintiff and interveners, and acting upon that sound discretion vested in him by the law itself, he cannot believe that an irreparable injury would result from the bonding of the injunction, and, for the reasons above set forth, he permitted the same to be bonded, and refused to grant a suspensive appeal. In view of 'the premises, he prays that he be hence dismissed, and that the demands of the relators be-rejected, at their costs.”
It is obvious, from the language used by the trial judge, that, had the matter submitted to-him been one seeking as an original proposition to obtain, from him a preliminary injunction as asked for, he would have rejected the application as premature; that, had it been one praying for the dissolution absolutely of the preliminary injunction as asked for, he would have dissolved it, as having prematurely issued. It is plain that he felt fettered as to his decree by the particular matter before him, which was simply asking *861 for a bonding, and not a dissolution of tbe injunction. As matters stood before him, instead of dissolving absolutely on bond the injunction which had issued (as defendant in injunction prayed he should do), his decree authorized and decreed a bonding on or with conditions attached. He substantially first modified the preliminary injunction, and then decreed its bonding as so modified. Koehl v. Judge, 45 La. Ann. 1488, 14 South. 352; State ex rel. Lehman v. Judge, 46 La. Ann. 173, 15 South. 283. The question before us is whether that decree, as so rendered, and in the terms it was rendered, works or will work an irreparable injury to the plaintiffs. We do not think that it can. Plaintiffs - are not concluded by the judge’s order from thereafter having recourse to another and further injunction under changing further conditions. The court’s decree is broad enough to afford the plaintiff all the relief presently called for by existing conditions. Had the judge ordered the bonding absolutely of the injunction, we do not think his action would have worked an irreparable injury, and, if this be so, still less can it do so when the bonding has protective conditions attached to it.
We are of the opinion that the writs prayed for cannot be ordered to issue. The orders heretofore granted herein are set aside, and the present application dismissed, without prejudice.