AYRES, Judge.
The object of this action is the abatement of an alleged nuisance. The subject of the complaint is a commercial broiler brooder house owned and allegedly operated by defendant in a residential area of the Town of Ruston, in which area plaintiffs, eight in number, own their homes and reside. From a judgment in defendant’s favor, plaintiffs appealed.
In their brief filed in this court plaintiffs state their position:
“We call to the Court’s attention that it is plaintiffs’ contention that they had no legal right to enjoin the defendant from constructing a chicken brooder house. The only right that the plaintiffs have is to enjoin the defendant from operating the brooder house in such a manner that it will give off obnoxious odors, smell and stench to the extent that it disturbs the adjoining property owners in the enjoyment of their homes. This is the only right that plaintiffs have. As a matter of fact, it is our opinion that plaintiffs can not enjoin the defendant from keeping chickens in his brooder house but can enjoin him from permitting obnoxious odors and smells escaping from the brooder house on to the premises of plaintiffs, thereby disturbing them in the enjoyment of their homes, and that is what plaintiffs are asking for in this case. We concede that it may be possible for defendant to keep a certain number of chickens in his brooder house without causing a stench or smell that would disturb the adjoining neighborhood.”
The operation of a brooder house, as well as the operation of any other lawful business, lawfully located, is not per se a nuisance, but by the manner of its operation it may become a nuisance. Its location and proximity to other property are factors to be considered. A brief résu-mé of the facts will be undertaken for an understanding of the issues involved.
After obtaining a permit from the Town of Ruston, defendant erected in the fall of 1951 the brooder house forming the basis for this action. This building, having a dimension of 20 x 70 feet, is constructed of frame walls, with an aluminum roof and with seven doors and seven windows on each side; the doors are aluminum and the windows are covered with isinglass. Its equipment consisted, among other appliances, of three gas-burning brooders; it had a normal capacity of 1,500 chicks. The house was located on defendant’s premises at 706 Tech Drive. Plaintiffs reside in that vicinity, the nearest some 80 to 100 feet from the brooder house and all others within a few hundred feet. During the fall of 1951, the ensuing winter and spring of 1952, defendant operated his brooder house by rearing and marketing therefrom three batches of approximately 1,500 to 1,750 chicks each. Preceding receipt of the chicks, the floor of the brooder house was covered to a depth of several inches with shavings obtained from lumber *288 planing mills, and during the eight or nine weeks required for- the chickens to become ■of marketable age and size, the shavings were replenished or turned as needed to maintain sanitary conditions. When the -chicks were sold, the house was cleansed, disinfected and opened for ventilation for about a week preceding the arrival of a new supply of chickens, whereupon the operation described above was then repeated.
After disposing of the third batch of chickens for commercial purposes, defendant concluded, due to complaints received at that time from some of his neighbors, to cease his operations of a brooder house for commercial purposes. He thereupon sold his brooder equipment, which was removed from the brooder house. He then discontinued his operations on. a commercial ■scale and has not since engaged in that business. Subsequently, however, plaintiffs’ suit was filed March 24, 1953, or about a year after defendant had discontinued his aforesaid operations.
In his answer filed April- 13, 1953, defendant averred that he had no present intention whatsoever of again engaging in the business of raising chickens commercially in that location or elsewhere. As a witness on the trial of the case two years later on April 28, 1955, he again reiterated his intention not to ever again engage at that location in the operation of a broiler brooder house for commercial purposes.
Although the house has not been used since the spring of 1952 for rearing chickens for commercial purposes, on occasions, particularly in connection with defendant’s minor son’s 4-H Club project, as many as 200 baby chicks have been placed in the brooder house. Within approximately nine weeks, when these chickens were ready to show, their number had been gradually culled down to a dozen. On one other occasion it appears, too, that for only a few days the building was used by one of the dealers in Ruston to store a few hundred chicks.
The universally and generally accepted rule of law is that, in the absence of restrictions such as may be imposed by zoning regulations or other appropriate authority, an owner of property has a right to conduct thereon any lawful business, not per se a nuisance, so long as that business is conducted in such manner that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. It is likewise a universally accepted rule of law that every business, however lawful, must be conducted with due regard to the rights of others and that no one has a right to erect and maintain a nuisance to the injury of his neighbors, even in the operation of a lawful trade, or to conduct a business on his property in such a way it will be offensive or injurious to those residing in the vicinity. Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816; Borgnemouth Realty Co. v. Gulf Soap Corporation, 212 La. 57, 31 So.2d 488; Frederick v. Brown Funeral Homes, Inc., 222 La. 57, 62 So.2d 100; Kellogg v. Mertens, La.App., 30 So.2d 777; 39 Am.Jur. 324, “Nuisances”, Sec. 43.
 The operation of a broiler brooder house is a lawful enterprise. It is not a nuisance per se, which has been held to be an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances, in fact, are those which become nuisances by reason of the facts, circumstances and surroundings. In this connection, 39 Am.Jur. 291, “Nuisances”, Sec. 11, states:
.“The difference between a nuisance per se and a nuisance in fact lies in the proof, not in the remedy. In the case of a nuisance per se, the thing becomes a nuisance as a matter of law. Its existence need only be proved in any locality, and the right to relief is established by averment and proof of the mere a-ct. But whether a thing not a nuisance per se is a nuisance per accidens or in fact depends upon its location and surroundings, the manner of its conduct, or other circumstances. In such cases, proof of the act and its consequences is necessary. The act or *289 thing complained of must be shown by evidence to be a nuisance under the law, and whether it is or is not a nuisance is generally a question of fact.”
See also Borgnemouth Realty Co. v. Gulf Soap Corporation, supra; Frederick v. Brown Funeral Homes, Inc., supra.
The word “nuisance” has been defined many times. 66 C.J.S. Nuisances, § 11, p. 727, gives this definition:
“Literally ‘nuisance’ means ‘annoyance,’ and, in its broadest sense, it is that which annoys or gives trouble or vexation, that which is offensive or noxious; anything that works hurt, inconvenience, or damage. The term signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions on use or conduct which the proximity of other persons or property in civilized communities imposes on what would otherwise be rightful freedom.”
39 Am.Jur. 280, “Nuisances”, Sec. 2, states:
“In legal phraseology the term ‘nuisance’ is applied to that class of wrongs which arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. It is so comprehensive that it has been applied to almost all wrongs which have interfered with the rights of the citizen in person, property, the enjoyment of his property, or his comfort.” See also Robertson v. Shipp, La.App., 50 So.2d 699, and the authorities here-inabove cited.
The testimony leaves little doubt, if any, that during the period of the aforesaid operation the offensive odors emanating from the brooder house did interfere with plaintiffs’ use and enjoyment of their residences and premises, especially when beyond the brooder house and in the path of the prevailing winds. A detailed statement of the annoyances suffered is unnecessary, but under the circumstances established by the record as existing at the time, it could only be reasonably concluded that the operation of the brooder house constituted a nuisance, especially in view of the manner of its operation and its proximity to neighboring residences.
But such a conclusion is not determinative of the issues now before the court. It is established from the evidence that defendant has not engaged in the operation of the broiler brooder house on a commercial scale since the spring of 1952. The keeping of a flock of poultry for family use was not shown to constitute a nuisance in this instance, neither has the rearing of a dozen or so of prize specimens from as many as 200 chicks culled down to that number within two months, or the storing of a few hundred baby chicks for a few days on only one occasion. If these constitute nuisances in fact, the 'burden is upon plaintiffs to so establish by proper proof. This burden has not been borne here.
There remains as a basis for plaintiffs’ complaint the existence only of the broiler brooder house, divested of its equipment, and the possibility that at some future time defendant might again engage in the operation of said brooder house upon a commercial scale or in a manner to disturb them in the use and enjoyment of their property. As stated heretofore, his operation on such a scale was discontinued a year before the filing of this suit. Both in his answer and in his testimony on the trial two years later, defendant disclaimed any such intention. In brief, plaintiffs state:
“We see no reason why defendant objects to this Court enjoining him from doing something which he claims now that he is not doing or has no intention of doing. Under th,e defendant’s contention, the injunction asked for by the plaintiffs would not hurt defendant in any manner. He readily admits that he does not want to cause his neighbors the discomfort and in- *290 conveninece of the smell of a chicken brooder house. Therefore, why does he object to the injunction 'being; issued by this Court?”
The answer to this contention is obvious. If an injunction issued against defendant, he would be assessed with the costs of a time-consuming' trial and of a very voluminous record. If he were subjected to actions by various and sundry parties seeking to enjoin him from every conceivable act which he had no intention of doing, it would be most unwarranted and unjust to hold that he had no defense and had to stand idly by and be condemned in the suit and cast for costs. Such is not the law as we shall presently show.
The jurisprudence of this State is that an injunction will not issue against the operation of a lawful business merely on the ground that it might be conducted in such manner as to become a nuisance. For instance, the Supreme Court in Frederick v. Brown Funeral Homes, Inc., supra, 62 So.2d at pages 110-111 stated:
“This court has on numerous occasions refused to enjoin the establishment or erection of a lawful business simply on the ground that it might be conducted so as to become a nuisance. Bell v. Riggs & Bros., 38 La.Ann. 555; Lewis v. Sandell, 118 La. 852, 43 So. 526; Canone v. Pailet, 160 La. 159, 106 So. 730; Graver v. Lepine, 161 La. 97, 108 So. 138.
“In Bell v. Riggs & Bros., cited supra, 38 La.Ann. 555, 556, this court said:
“ ‘The rule is founded in reason and firmly established by authority that injunction will not lie against a prospective nuisance except in cases where its establishment will occasion imminent danger or irreparable injury, or at least where there is no question that the proposed erection will be a nuisance viola-tive of legal right. Wood, Law of Nuisances, para. 103, 1047
“Likewise in Lewis v. Sandell, cited supra, 118 La. 852, 859, 43 So. 526, 529, the court held ‘that a lawful business not yet in existence and not a nuisance per se could not be enjoined on the face of the papers until evidence had been adduced to establish same’.
“Again in Canone v. Pailet, cited supra, 160 La. 159, 162, 106 So. 730, and Graver v. Lepine, cited supra, 161 La. 97, 100, 108 So. 138, 139, this court held: ‘A lawful business is never a nuisance per se, and no one has the right to prevent the establishment of such business for fear that it might be ■conducted so as to become a nuisance.’ ”
It is firmly established by the record, as we understand and appreciate it, that defendant is not now and has not been operating the broiler brooder house since 1952 in such manner as to constitute a nuisance or in a manner to interfere with or annoy plaintiffs in the use and enjoyment of their residences and properties. It is likewise clear that he has no intentions of renewing such operations.
While we have in some detail stated the basis and given our reasons for our conclusions, the judgment appealed could equally as well and very appropriately be sustained on the fact that the record does not disclose any manifest error in the judgment appealed.
The conclusions reached on the merits obviate the necessity of ruling on the pleas and exceptions filed on behalf of defendant.
Accordingly, for the reasons assigned, the judgment appealed is affirmed at appellants’ costs.
Affirmed.