OVERTON, J.
 

 Plaintiff is the owner of an undivided half interest in two lots of ground and a cottage located thereon, and is the usufructuary of the • remaining half interest therein. The property is situated near the river, in the third district of New Orleans, in the square bounded by Bienvenue, Delery, Jumonville, and Tricou streets, and fronts on the street last named. The lots were purchased by plaintiff’s husband from one Labat in 1892. The cottage was not built on them until about 19 years ago. From the time of the construction of the cottage until 1909 the property was occupied as a home by plaintiff, her husband, and their children. In 1909' plaintiff’s husband died, and since then it has been occupied by plaintiff and her children, or most of them. At the time plaintiff and her husband built this home that part 'of the city in which it is located was what might be said to be strictly residential, and remained -so for about 15 years. In 1918, while the World War was in progress, the Emergency Meet Corporation was establishing dry-docks and other facilities for repairing ships in various ports. This caused E. D. Jahncke to visit Washington in an effort to have such facilities established at New Orleans. The visit resulted in an understanding by which the Emergency Fleet Corporation agreed to advance approximately $1,500,000 towards the construction of these facilities here, provided that Jahncke, or he and his associates, would invest a similar amount. The project having been undertaken, a site was selected by governmental agencies,t on the river, in the Third district of New Orleans, at a point which happened to be in the immediate vicinity of plaintiff’s property. The Jahncke Dry-Dock & Ship Repair Company, Inc., was organized about that time, and the site, covering a number of acres of land, was purchased, and the dry-docks and repair plant were constructed. In the establishment of the plant on the site at which it is located the city co-operated by authorizing the closing, so far as necessary, of sections of certain streets running through the site, and the board of commissioners of the port of New Orleans also co-operated by the granting of the right to use the banks of the river between the levee and the water for the purpose of constructing and operating the dry-docks. The plant constructed consists of dry-docks, wharves, woodworking, sheet and plate metal shops, a power house, and such appliances as are necessary for the proper operation of plants of this description. In 1922 the Jahncke Dry-Docks, Inc., was created under the laws of Delaware, and purchased all the assets of the Jahncke Dry-Dock & Ship Repair Company, Inc., and has since been operating the plant. The amount advanced by the Emergency Meet Corporation has been repaid, and the stock in the present corporation is owned entirely by residents of New Orleans.
 

 Mrs. Monlezun, the plaintiff herein, complains that the operation of the machine shop, boiler works, and an iron foundry, which, she alleges, has been installed in the plant within a year prior to the filing of this suit, is a
 
 *403
 
 nuisance, is damaging to her health and property, and alleges that:
 

 “Said Jahncke Dry-Docks, Inc., has installed and now operates in said machine shop, boiler works, and an iron foundry, near the Tricou street property line, and not more than from 50 to 75 feet from petitioner’s home and residence, hammers, drills, and other machines of character usually found in such plants, which hammers, drills, and other machines are operated by steam, compressed air, or other motive power, by a large force of mechanics, resulting in loud and heavy jarring, hammering, and battering noises and sounds, whenever said plant is in operation, of such a character that the use of petitioner’s said residence as a home and dwelling house has been practically destroyed, and the continued occupancy thereof by petitioner and her family is almost unbearable.”
 

 Plaintiff also alleges that, in the operation of the machine-shop and hoiler works, battering and hammering noises have been made from the time of the erection of the plant every day and frequently at night, and that, since.the purchase of a foundry and the removal of its equipment, or part thereof, about a year ago, to the property directly across the street from her home, the night work at the plant has increased, so that the machine shop, boiler works, and iron foundry, as a result, are operated, not only every 'day until sundown, but almost every night, and that the sounds emanating therefrom have been increased to such an extent as tp he injurious to her and her property, and to those living in the house. She also alleges that the hammering and battering noises, caused by the operation 'of the works complained of, are so great that during the day she cannot carry on, in her home, a conversation in an ordinary tone, and that night after night she and her family have been deprived of their sleep, entailing upon them much mental suffering and nervous exhaustion. She also alleges that the vibration caused by the operation of the machine shop, boiler works, and foundry shakes the foundations of her home, and has caused the walls of the kitchen to he forced away from the main part of the house, and that, as a result of the erection and operation of said works, her property has been rendered unfit for use as a dwelling, and has been depreciated in value to the extent of $1,-000. She also alleges that she has suffered damages in the sum of $1,500 by reason of loss of sleep, mental suffering, and nervous exhaustion, and by reason of the deprivation of the peaceful and comfortable enjoyment of her residence, caused by the operation of the machine shop, boiler works, and iron foundry, but does not complain of the dry-docks.
 

 The prayer of her petition is that the Jahncke Dry-Docks, Inc., be ordered to show cause why a preliminary writ of injunction should not issue restraining said company from operating a machine shop, boiler works, or foundry on Tricou street, opposite plaintiff’s home; that the injunction issue and be perpetuated; and that plaintiff have judgment against the company in the sum of $2,-500, With legal interest thereon from judicial demand.
 

 The defendant filed its answer. The evidence offered on the trial of the rule nisi was offered also on the merits, and both the rule and the case on its merits were submitted at the same time.
 

 The evidence, in addition to the facts stated in the first part of this opinion, shows that, when it was decided to locate the plant at its present location, no complaint was made by any one. Plaintiff made none. In fact, she says in a letter of complaint, written a few months before this suit was filed, that, when it was decided to locate the plant in that neighborhood, she and others thought the improvement would be a great one for the neighborhood, which shows that she was not then averse to its being located there. The evidence also shows that the machine, blacksmith, and plate shops are in a large brick building, which covers an entire square. One side of this building abuts the property line on Tricou street, which places the building
 
 *405
 
 approximately 50 feet from plaintiff’s property. The evidence also shows that the part of this building, which is nearest Tricon street, is not used for working purposes, but for storage and other purposes. The active work, done in the shops, is done in other parts of the building. In those parts, among other things, riveting is done, and a large iron hammer, operated by compressed air, is used in some of the work. The power house is located near by, on St. Maurice avenue, in a steel and concrete building. Besides the dynamos and other machinery used in the production of electricity, there are in this building heavy circular saws, which are used in sawing steel., The dry-docks are in close proximity, on the banks of the river, but there is no complaint as to them. No iron foundry has been established in the plant, nor are boilers manufactured in it, though they are .there repaired. As relates to the effect of the noises made in the plant on those living in its immediate neighborhood, the evidence is conflicting. Plaintiff, her son, a lady who visits plaintiff at times, and one or two others, describe the noises as unbearable, and testify that they interfere with rest at night, and frequently make it impossible in the daytime to converse in an ordinary tone. On the other hand, many others who reside in the neighborhood, but who are working in the plant, or who have an indirect interest in its continued operation at its present location, testify that they and the members of their families experience no serious discomfort from noises emanating from the plant; that, conversations may be carried on in their homes in an ordinary tone; and that their rest is not broken at night by noises coming from it. The leading official of the plant, however, concedes in his evidence that the plant does make noise in operating, and that plants of such nature cannot be operated without making noise, and considerable noise. The evidence shows, however, that no more noise is made than is necessary; that every effort has been made to avoid the making of it; and that the noises made are not due either to defective machinery or to an improper manner of operating or working. The evidence also shows that, while the comforts of plaintiff’s home have been interfered with by the construction and operation of the plant, yet, in point of fact, the property has increased in value. The evidence fails to show satisfactorily that the separation of the kitchen from the main walls of the house was due to vibrations caused by the plant.
 

 In view of the fact” which seems obvious to us, that a plant, such as the one in this instance, and especially a large one, cannot be operated without making considerable noise, and in view of the location of plaintiff’s home with reference to the plant, our conclusion is that plaintiff is suffering, and has suffered, considerable annoyance on account of the operation of the plant, and the question is whether, under the circumstances, she is entitled to the relief for which she prays, or for any part of it.
 

 In 29 Cyc. pp. 1157, 1158, it is said that:
 

 “The locality is to be considered in determining whether there is a nuisance, for what might be a nuisance in one locality might not be so in another. Thus a business which might he perfectly proper in a business or manufacturing neighborhood may be a nuisance .when carried on in a residential district; and conversely a business which with its incidents might well be considered a nuisance in a residential portion of a city or village may be proof against complaint where conducted in a business or manufacturing locality. * * * ”
 

 “It is the character of the locality at the time of the annoyance complained of that governs, so that, although a locality was originally residential, if it has lost that character or become a business or manufacturing neighborhood, the annoyances incident to such a locality cannot be complained of. * » * ” 29 Cyc. p. 1158.
 

 In Le Blanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 17 L. R. A. (N. S.) 287, it was said:
 

 
 *407
 
 “The location and operation of factories and other worts likely to disturb neighbors by reason of smoke, smells, etc., must be determined by the rules of the police or the customs of the place. Civ. Code, art. 669. The evidence shows that the defendant constructed and is operating its plant under a permit from the municipal authorities. The plaintiff made no opposition to the granting of this permit. It is not charged that the defendant has violated any of the requirements of city ordinances relative to factories. The permit to operate a manufacturing plant at a particular place carries with it the privilege of using all machinery necessary for the particular work. The owner of such a plant must take all proper precautions to prevent noise, -smoke, etc., from becoming a nuisance to the neighbors, and to that end must comply with the requirements of all the police regulations on the subject-matter.
 

 “This being done, unavoidable noise, smoke, etc., must be considered as an inconvenience to which thje neighbors must submit for the public good. Of course, a city ordinance or permit cannot validate a nuisance. Blanc v. Murray, 36 La. Ann. 162 [51 Am. Rep. 7]. Thq noise of a factory is'not a nuisance per se, City of New Orleans v. Lagasse, 114 La. 1055, 38 So. 828.”
 

 Plaintiff’s home is located very near the Mississippi river—only about a block and a half from it. In cities and towns on large navigable streams the squares fronting on such streams are to a greater or less degree (and usually to a greater, especially where the part of the stream on which the city is located is also a port), devoted to purposes of commerce, and on such squares factories are not infrequently built. When plaintiff and her husband located their home there, they might have expected that sooner or later factories would be erected in the neighborhood, and possibly such a plant as the present one. Moreover, when it was decided to locate the plant there, plaintiff raised no objection, but, to the contrary, the decision met with her approval, and it was not until several years after the plant had been erected and had been in operation that she raised any objection. Besides, the city virtually approved the location when it authorized the closing of certain streets for the erection of the plant, a circumstance which it is proper to take into consideration. In these circumstances our opinion is that the injunction should not issue. In this connection it may be said that the cases of Froelicher v. Oswald Ironworks, 111 La. 705, 35 So. 821, 64 L. R. A. 228, and Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882, are unlike this case, in that in them there was no acquiescence on the part of the plaintiff with reference to the construction of the works as in this case.
 

 We have considered plaintiff’s right to have the operation of the plant at night enjoined. The plant operates frequently at night and sometimes as late as 1 or 2 o’clock in the morning. However, the evidence fully discloses that it is necessary that the plant should operate at night as well as in the daytime,, if it is to operate-successfully. This is so because the work it does is largely emergency work, and the ability to get the work frequently depends on the shortness of the time in which it can be completed. Our opinion is that plaintiff is not entitled to an injunction in this re'spect.
 

 As relates to the damages for the decrease in value of plaintiff’s property, it is sufficient to point out that the record fully justifies the conclusion, as found by the trial judge, that the property, while it may not be as generally desirable as a home as it was before, has, in fact, increased in value, due largely, we think, to the erection of the plant, and, besides this, plaintiff raised' no objection to the erection of the plant. As relates to the remainder of the damages demanded, for the reasons assigned why the injunction should not issue, we think.that that part of the demand should be denied.
 

 The lower court rejected plaintiff’s demands. We think that the judgment appealed from should be affirmed.
 

 The judgment is affirmed.