50 So.2d 699 (1951)
ROBERTSON et al.
v.
SHIPP.
No. 7532.
Court of Appeal of Louisiana, Second Circuit.
February 8, 1951.
*700 Gist, Thornton & Murchison, Alexandria, for plaintiffs-appellants.
J. M. Shevnin, Alexandria, J. W. Ethridge, Colfax, for defendant-appellant.
TALIAFERRO, Judge.
The character of this action is reflected from that part of the prayer of the petition, which we quote, to-wit: "that after due proceedings had and trial hereof, there be judgment in favor of your petitioners, Gordon Robertson, Frank Tarver, Joseph T. Simms and Maurice Robertson, and against the defendant, R. Walter Shipp, enjoining him from keeping, raising, boarding and maintaining dogs on the property referred to in the above and foregoing petition, for abatement of the nuisance herein complained of."
Defendant owns and lives upon a tract of 8 acres fronting on a gravel road that courses easterly and westerly, and had lived *701 thereon for some 35 years when this case arose. For this entire period he has maintained thereon kennels and pens to accommodate bird dogs, which were entrusted to him for boarding, raising and training, for pay.
Gordon Robertson owns a tract of land of 108 acres that also fronts on said gravel road, opposite defendant's land. He has resided thereon with his family since the year 1921. His residence is 250 feet distant from one of the dog pens, and 380 feet from another.
Frank Tarver, with wife and children, lives upon land owned by him, east of defendant's, a narrow lane separating the two tracts, and has lived thereon since December, 1933.
Plaintiff Simms' residence is 1400 feet distant from the nearest pen, and the residence of Maurice Robertson is 1600 feet from the pen nearest to it.
The demand as to these two latter plaintiffs was rejected, we think properly, as we shall undertake to demonstrate later on in this opinion. Hereinafter, reference to plaintiffs will mean Gordon Robertson and Frank Tarver.
From the beginning, until August, 1947, the number of dogs kept by defendant on his premises has varied from a very few to 35 or 40, including puppies.
The operation of the kennels seems not to have aroused in plaintiffs any dissatisfaction or discomfort until the number of dogs was greatly augmented in August, 1947, when defendant accepted from one Joe Graham of Lafayette, Louisiana, a large number of dogs for keeping, boarding and training. There is evidence in the record indicating the number of the Graham dogs to have been at least 100. After accepting Graham's dogs, defendant's policy changed. He would not accept dogs from others. From this time on, either because the number of dogs had so greatly increased, or Graham's dogs were much more noisy than their predecessors, plaintiffs and their families began to suffer annoyance, inconvenience and discomfort from the howling, barking, growling and yelping of the dogs, and from the odors and files emanating from the pens and kennels.
As a basis for this suit, in addition to alleging the facts, or nearly all of them, narrated above, plaintiffs alleged, to-wit:
"Petitioners show that the animals in question, because of loneliness, sickness or inattention or for no reason at all, maintain an almost continuous growling, howling, yelping and barking day and night, but particularly during the hours of darkness; that petitioners and their families are worried and disturbed thereby and suffer loss of rest and sleep, peace and quiet, resulting in extreme mental and physical exhaustion and suffering; that same is detrimental to the health of your petitioners and their families; that further the extreme noise and confusion caused by these dogs would have the same effect upon any person of normal sensibilities.
"Petitioners further show that a continuance of the howling and barking of these dogs not only disturbs the rest and quietude of them and their families, but that it will result, if it has not already done so, in materially affecting the value of their homes and will reduce the desirability of same for residence purposes.
"In addition to the disturbance resulting from the continued howling, yelping and barking of these dogs, petitioners, Robertson and Tarver, show that the stench or smell resulting from the confinement of such a large number of dogs in a restricted area, in the midst of what is in effect a residential section, and in such close proximity to the homes of these petitioners, is so offensive and objectionable as to be injurious to the health, sensibilities and peace of mind of these petitioners; that there are flies in large numbers in and about said pens and all over the neighborhood as a result of the keeping of said dogs at that location and said flies and said stench or smell are definitely injurious to the health and sensibilities of petitioners; that further said flies and said smells and stench would have the same effect upon any person of normal sensibilities.
"Petitioners further show that the keeping, raising and boarding of such a large *702 number of dogs at the point in question and under the circumstances herein detailed, constitutes a nuisance which petitioners are entitled to have enjoined by this Court, defendant having refused to comply with petitioners' request for a discontinuance of the keeping of said dogs at said location.
"Wherefore, Petitioners pray that the defendant, R. Walter Shipp, be duly cited to appear and answer to this petition; that after due proceedings had and trial hereof, there be judgment in favor of your petitioners, Gordon Robertson, Frank Tarver, Joseph T. Simms and Maurice Robertson, and against the defendant, R. Walter Shipp, enjoining him from keeping, raising, boarding and maintaining dogs on the property referred to in the above and foregoing petition, for abatement of the nuisance herein complained of."
Defendant denied generally and specially the essential allegations of the petition upon which plaintiffs rely for success. He additionally pleads that his business was established many years prior to the time plaintiffs established their residences in close proximity thereto and for this reason they have no right to complain of the methods and the manner in which he operates the business, nor of incidents that accompany its operation. He further alleges that his business is a valuable asset to the community in which it is located; that he depends upon the profits derived therefrom for a livelihood for himself and his family; that he has produced and trained dogs that have excelled in habits and quality, one of which at one time having sold for $2,000. He incorporated in his answer exceptions of no cause and no right of action, and prayed that plaintiffs take nothing by this suit.
The Court overruled the exceptions, and at same time gave judgment for plaintiffs, Gordon Robertson and Frank Tarver, enjoining the defendant from engaging in the business of keeping, raising, boarding and maintaining dogs and dog kennels on his eight-acre tract of land: "to the extent of being a nuisance or inconvenience to plaintiffs in the use of their respective properties on which they reside with their families and maintain their homes."
Defendant was cast for all costs "except that part of the costs incurred by plaintiffs, Joseph T. Simms and Maurice Robertson, which are decreed to be paid by said plaintiffs."
All of the petitioners and the defendant appealed.

Exceptions of No Cause and No Right of Action
Defendant's position on the exceptions is that since it is not alleged that the nuisance is causing irreparable injury to plaintiffs and/or their properties, they are not entitled to injunctive relief.
It is to be observed from the allegations of the petition and the prayer thereto that plaintiffs seek no money judgment to compensate them for the baneful effects of the alleged nuisance. They ask only that they be given relief through the equitable remedy of injunction to inhibit the operation at its present location of a business deemed by them to produce a nuisance, because of the physical effect it has had and is having upon them and the members of their respective families; and upon the value of their properties.
It is not specifically charged in the petition that the injury to petitioners because of the nuisance is irreparable, that is, not compensable in money; but surely a fair and reasonable construction of the language of the petition leads to the conclusion that, if true, the facts constituting the alleged nuisance create conditions, in legal contemplation, that are irreparable. It is unthinkable that any person possessed of normal senses of smell, hearing and sight, could be paid to perennially endure loud nocturnal barking, howling, growling and yelping of so many nearby dogs, swarms of flies and offensive odors emanating from their pens and kennels. It is clearly shown that because of the nuisance the properties of Gordon Robertson and of Frank Tarver have declined in value and desirability for residence purpose.
The late case of McGee v. Yazoo & M. V. R. Company, 206 La. 121, 19 So. 2d 21, reaffirmed the doctrine well established *703 in this state, that where it is clearly shown that a nuisance is causing a "material, substantial, and irreparable injury to nearby property owners, for which there is no adequate remedy at law, the injured person is, as a matter of right, entitled to injunctive relief." Of course, in such a case "adequate remedy at law" means an injury of such character that the payment of money will stone. In the cited case excessive smoke, soot, cinders, noxious gases, etc. from defendant's trains were the basis of the complained of nuisance.
We are of the opinion that the allegations of the petition bring it within the holding of the McGee case and, this being true, affirm the Lower Court in overruling the exceptions.
Anent this question, the applicable legal rule is well stated in 39 Am.Jur., pages 324 and 325, as follows: "A trade or business lawful in itself becomes a nuisance when from the situation, its inherent qualities, or the manner in which it is conducted, it causes material injury to the property of another, interferes with his comfort and enjoyment, injures the health of those living in the vicinity, or interferes with their ordinary physical comfort, measured by the habits and feelings of ordinary people. It is not necessary that life or health be endangered; it is sufficient if the business produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable."
And, on page 348, § 65, of the same work, we find: "The barking, howling, and whining of dogs may constitute a nuisance and may be enjoined, where it results in serious annoyance to neighboring residents and interferes with the reasonable use and enjoyment of their property."
The Supreme Court in City of New Orleans v. Lenfant, 126 La. 455, 52 So. 575, 29 L.R.A.,N.S., 642, defined a nuisance to be "anything which incommodes, annoys, or produces inconvenience or damage", and said that a nuisance in fact is "one which becomes a nuisance by reason of circumstances and surroundings."

The Merits.
Plaintiff, Maurice Robertson, frankly testified that the barking, etc. of the dogs did not disturb him to any material extent; nor did the flies and odors. Plaintiff, Simms, testified that the barking, etc. of the dogs did not bother him until the spring and summer of 1948; and said that after that time when his house was open: "We were awakened from one to a half dozen times each night with dogs barking and howling, and sometimes we could go back to sleep and sometimes we didn't. Consequently, it creates a nervous situation when a man has to work. Otherwise, the dogs doesn't (sic) bother me." The odors did not bother him. No member of his family was called upon to testify. His testimony stands uncorroborated. According to his stated experiences the dogs bothered him more than they did Gordon Robertson or Frank Tarver and the members of their families. Not one of them testified that the dogs' actions disturbed them as many as half dozen times "each" night.
The trial judge, by consent of the parties, visited the locus in quo, and doubtless made some observations that aided him in reaching a decision on all issues of the case. He decided that Simms had no valid base upon which to register complaint against the presence of the dogs. Doubtless, the distance, one quarter of a mile, between Simms' residence and the nearest pen had a controlling influence in the determination of Simms' right to sue herein. We find no error in this ruling.
The record in the case, in point of volume, is very much in excess of the average. This is largely due to the number of witnesses who testified in the case. Plaintiffs introduced twenty witnesses besides themselves, while defendant introduced thirtyfive, not including himself. Many of the witnesses were related by blood or marriage to the side in whose behalf they appeared. Nine of the Shipp family testified for the defendant while eight of the Robertson family appeared for the plaintiffs. There were some in-laws on each side.
One cannot visualize a case wherein the testimony could be in greater conflict. It seems that nearly all of the members of the *704 community became interested in the outcome of the case and arrayed themselves for or against one side or the other. The testimony of many witnesses, because of lack of opportunity to learn the true facts, has little bearing upon the main issue of the case.
That defendant is a highly efficient trainer of bird dogs is well established. This ability, naturally, drew for him extensive patronage from sportsmen who delight in quail shooting. The number of dogs at his place, on an average, prior to taking over Graham's, has been variously estimated by witnesses who did not have opportunity nor reason to count them. It is reasonable to assume that the number increased as time went on until existing facilities to accommodate them were exhausted. Defendant testified that the Graham dogs numbered about 50 which then increased the number on hand to around 100, but he also admits that in December, 1947, he was keeping 109 dogs that belonged to Graham, and then began to reduce the number by sales, until at time of the trial only 55 were there. A fact of some significance bearing on the question arises from the necessity to increase the number of pens from two to ten, to accommodate the Graham dogs.
Throughout the taking of testimony defendant sought to prove that the average number of dogs at his place at time of and immediately prior to filing this suit did not exceed the average kept by him for many years prior to that time. If this were true, the deduction would follow that from a standpoint of noise, based upon numbers, plaintiffs now have no more ground for complaint than they had for many years prior to filing of the suit. The fallacy of this position is reflected from the well known fact that only a few dogs, even one, under some circumstances, may so act as to create a nuisance. And, in addition, the disposition of some dogs to howl, fret, bark loudly, etc. is more pronounced than appears in others.
No good purpose would be promoted by burdening this opinion with analysis of the extremely conflicting testimony of the numerous witnesses. According to the testimony of the plaintiffs and members of their respective families and others in a position to have accurate knowledge of the true facts, certainly the loud barking, howling, yelping, etc. and, at times, fighting, of the dogs, inconvenience, disturb and discomfort them. Especially is this true at night when rest is needed and sought.
We would indeed be greatly surprised to learn that a congregation of as many as 50 or more dogs of any sort in small pens for hours, day and night, would not, from their fretting, barking and howling, create a nuisance as to persons living within 400 feet of them. It is a natural propensity of members of the canine family, under such restraint, to make known their discontent by vocal outbursts of no uncertain tone. Under such conditions, as clearly appears in the present case, their quietude is easily disturbed by the approach of strangers and passing motor vehicles. It generally occurs that in the beginning only a few join in the noise-making, but gradually others take part, and soon the whole number, or nearly so, make their contribution to the din.
The business of boarding, raising and training dogs in large numbers, in a rural community, such as that wherein the parties hereto live, is not per se a nuisance. It would, of course, be so classified if operated in a city, town or village. Many legitimate businesses not per se objectionable may be so conducted as to become objectionable to nearby neighbors to the extent that they can be properly classified as nuisances. This is what happened in the instant case.
Defendant testified and we have no reason to discount what he says on the subject, that when the dogs become very noisy, night or day, he goes among and succeeds in silencing them. Naturally, he would do this because his own home is near the pens. But we cannot conceive that he could quickly silence all of the animals at once when it is recalled that they are in many pens scattered about his premises. Anyway, at night, before his intervention could be entirely effective, plaintiffs' families, from the noise would be awakened, and their rest upset perhaps for the night.
*705 We have heretofore stated that the trial judge, accompanied by plaintiffs, the defendant, and counsel for both sides, inspected the locus in quo after conclusion of the two days trial.
The written reasons for judgment deal with all phases of the cases. It is comprehensive. As the case turns upon questions of fact, resolution thereof by the trial judge has and should have a very important bearing and influence upon our final determination of the issues. Referring to the situation after defendant took over the Graham dogs, the judge said: "After this increase of the number of dogs, then it was that plaintiffs began to complain of the disturbance caused by the barking, yelping, howling and other noises created by the dogs which became so constant and disturbing to plaintiffs and their families and friends who visited them that they were unable to have peace and quietude in their home life during daytime and were prevented from sleeping at night without being frequently disturbed and aroused by the noise created by said dogs."
Anent the visit to the scene, and his observations there, the judge says:
"The visit was made on a sunny afternoon and there appeared to be very little evidence of fowl (sic) odors or stenches or flies about the pens or on the premises and the dogs appeared to be clean and in good condition.
"Two inspections had been previously made as shown by the evidence and the premises had been testified by witnesses as being in a clean and in good condition.
"The road leading to defendant's premises leaves the highway just west of the premises and passes in front of plaintiff, Gordon Robertson's home, just before entering upon the premises to the home of defendant.
"About the time the party of the Court was leaving the highway, the pack of about 55 dogs began barking, yelping, and howling and making noises which continued until the party arrived and became settled in the lane at defendant's home and among the dog kennels situated thereon.
"This commotion of the dogs, as one would expect, created considerable noise.
"The Court wonders how often this might occur either day or night caused by cars passing along the highway.
"If such noise being made often, then it would disturb the peace, quietude, and enjoyment of the home life and surely would be calculated to disturb rest and quietude of sleepers at night to such an extent as to constitute a nuisance.
"The testimony of plaintiffs' witnesses show that when the wind is blowing from the home of defendant toward the homes of plaintiffs, except plaintiffs Joseph T. Simms and Maurice Robertson, that odors and smells from the kennels on defendant's premises would add to the disturbance caused by the noise of the dogs and, hence, would be an added condition constituting a nuisance."
Study of the record impels us to the conclusion that the lower Court correctly held that the preponderance of the testimony (and, we say, supporting circumstances), sustains plaintiffs' contentions.
Cases involving nuisance due to the proximity of dogs are not new in the jurisprudence of this state. This Court in Talbot v. Stiles, 189 So. 469, affirmed judgment of the District Court that enjoined the defendant from continuing a nuisance caused by the barking, howling and yelping of dogs detained for medical and/or surgical treatment. Defendant in that case was a veterinarian. There were not nearly so many dogs on hand at any one time as in the present case, but plaintiff's residence was much closer to the pen of detention than are the plaintiffs' in the present case.
The Orleans Court of Appeal in Marks v. Luce, 1 Orleans App. 107, enjoined the defendant from keeping one dog that caused extreme annoyance, inconvenience and discomfort to the plaintiff.
The contention that because plaintiffs established residence near to that previously established by the defendant, and at a time when he continuously kept several dogs on and about his premises, they have no valid right to complain of the method and manner in and by which his business is being conducted, is not well founded. It is without merit for at least two reasons, viz.: (1) When plaintiffs established *706 residences there, either because of the quality or quantity of the dogs, their conduct had not created such conditions as developed after the Graham dogs had been introduced there, and, (2) the right to conduct a business in such way or manner as to amount to a nuisance may not be prescribed for. This very question was considered and adjudged by this Court in the case of Ellis v. Blanchard, 45 So.2d 100-104, wherein we ruled adversely to defendant's contention therein and here. To support our ruling we cited Tucker v. Vicksburg, S. & P. Railway Company, 125 La. 689, 51 So. 689. The principle is discussed in 39 Am.Jur., page 476, § 201. It is said therein that with one exception the jurisprudence of all of the states is the same. The majority rule is against defendant's contention in the present case.
In support of his position on the discussed question, the defendant relies on Monlezum v. Jahncke Dry Docks, Inc., 163 La. 400, 111 So. 886, and Hardin v. Huckabay, 6 La.App. 640. In each case the plaintiff was unsuccessful. The facts of the cases are quite different from those in the case at bar. In the first one plaintiff sought to stop the enlargement of a cemetery close to which he had lived for some years. In the second case the plaintiff, who had complacently allowed the construction of a shipyard near his residence, was denied injunction to abate the inconvenience, etc., thereby caused him. To afford him the relief sought, it was made clear, would have entailed the demolition of very large and expensive improvements, etc. His right to interfere was held to have been waived by his failure to timely act.
Because plaintiffs delayed appeal to the Court for relief against the conditions produced by the dogs, does not, in our opinion, amount to acquiescence in such conditions. They knew that defendant's business had been conducted for many years in a manner not disturbing to them, and they indulged the hope that it would return to that status. Having endured the intolerable and highly discomforting conditions for a time sufficient to prove to them that they were permanent, naturally relief was sought by appeal to the Court.
Appellants, Maurice Robertson and J. T. Simms, complain of being cast for any part of the cost, while, on this score, defendant complains that the proportion of the costs which these two plaintiffs should pay was not, but should be, definitely fixed.
Appellants, Gordon Robertson and Frank Tarver, complain of the lack of accuracy in the wording of that part of the judgment that orders the abatement of the nuisance.
Act No. 229 of 1910, LSA-RS 13:4443, 13:4444, confers upon appellate courts plenary power to fix responsibility for payment of costs in suits appealed to them. As plaintiffs, Maurice Robertson and J. T. Simms lost their cause in both courts, it is but fair and equitable that they should be each cast for one-fourth of all costs incurred.
Concerning the wording of the judgment, it is clear that the Court did not intend thereby to peremptorily suppress defendant's business, but, on the contrary, left it to him to take such steps and to so adjust his business that it would cease to be of such inconvenience, discomfort, and disturbance to plaintiffs as to amount, in law, to a nuisance. Defendant is the best judge of the measures needful to the accomplishment of the desired relief. However, we say, in passing, that material reduction in the number of dogs maintained will likely bring about satisfactory conditions, but if this action should not do so, then there would be open to defendant one other course, viz.: removal of the pens and kennels from plaintiffs' residences a sufficient distance that the conduct of the dog business will not bother and disturb them as it has done for the past three years.
In the McGee, Talbot and other cases, the defendants were not ordered to perform any specific acts to abate the nuisance in question. They were left free to do whatever was necessary to meet the Court's judgment, but were required to do this.
For the reasons herein assigned, the judgment from which appealed is affirmed.
Appellants, Maurice Robertson and J. T. Simms, are each cast for one-fourth of the costs in both Courts, and appellant, Shipp, is cast for one-half of said costs.