SAMUEL, Judge.
This is an action for property damage in the amount of $223.61 allegedly resulting from the demolition of a building. There are two plaintiffs: Louis Hane-mann, the owner of the property damaged, and his subrogated insurer. The defendants are the owners of the building being demolished, Harry J. Norvell and Eddie Tabor, and the corporation doing the demolition work under a contract with those owners, Deep South Dismantling Co., Inc. Another defendant, Norvell & Tabor Inc., is no longer in the case; that corpora *82 tion originally was brought in only as the result of an allegation in the petition that either it or Norvell and Tabor owned the property being demolished.
Norvell and Tabor answered denying liability and, assuming the position of third party plaintiffs, made demand against Deep South for judgment over against that corporation in the amount of any judgment which might be rendered against them. The third party demand is based on an allegation that in the contract for demolition of the building Deep South agreed to protect third party plaintiffs against all claims for damages in connection with that work.
Deep South answered the original petition averring it was guilty of no negligence in the performance of the demolition operations, denying that those operations caused any damage to plaintiff’s property, and denying liability. It answered the third party demand with the same averment and denials contained in its answer to the original petition and also denied it had agreed to hold third party plaintiffs harmless in its performance of the work under the contract.
There was judgment in the trial court on the original demand in favor of the original plaintiffs and against Norvell and Tabor in the sum of $223.61 and, on the third party demand, in the same amount in favor of Norvell and Tabor and against Deep South. Deep South and Norvell and Tabor have appealed therefrom.
The original plaintiffs base their claim against Deep South on LSA-C.C. Art. 2315, i. e., negligence on the part of that defendant. Their claim against Norvell and Tabor is based on LSA-C.C. Art 667, which provides:
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.” LSA-C.C. Art. 667.
While C.C. Art. 667 imposes liability even in the absence of fault, it imposes such liability only, in the words of that article, where the proprietor makes any work “which may be the cause” of the damage to his neighbor. And liability under C.C. Art. 2315 occurs only as a result of fault, or negligence, which is the proximate cause of the damage. It follows that in this case, as to all original defendants and under either article, it is incumbent upon the original plaintiffs to prove by competent evidence that the work being done by Deep South on the property of Norvel and Tabor caused the alleged damage; the doctrine of res ipsa loquitur is not applicable here. Tadin v. New Orleans Public Service, Inc., 226 La. 629, 76 So.2d 910; Aleman v. Sewerage and Water Board of New Orleans, 196 La. 428, 199 So. 380; Brown v. Travelers Insurance Co., La.App., 169 So.2d 230; Beck v. Boh Brothers Const. Co., La.App., 72 So. 2d 765; Hearsey v. City of New Orleans, La.App., 192 So. 148.
The undisputed facts shown by the record are: The property of the plaintiff Hane-mann, his residence, fronts on St. Charles Avenue in the City of New Orleans. The property owned by the defendants Norvell and Tabor fronts on Constantinople Street and adjoins the Hanemann property in the rear. An old frame residence on the Constantinople Street property was being demolished by Deep South under a contract with the defendants-owners. The demolition work had been going on for some time and there remained only one or two walls and the floors to be taken down. Those walls were about 40 to 50 feet from the dining room door of the Hanemann residence.
 On behalf of the original plaintiffs Mr. Hanemann testified: His maid called him at his office at about 9:00 or 10:00 in the morning and informed him of damage done to the rugs and draperies in *83 the house. He arrived at his home within 10 or IS minutes after the telephone call and found dust “like a heavy smoke” in the dining room; it was all over the floor and in the air. The dust damaged the dining room rugs and draperies to the extent that they had to be taken out and cleaned at a cost of $223.61. Mr. Hane-mann also testified he had previously seen the Deep South workmen pull some of the walls down with ropes. However, he was not present at the time the damage occurred. The portion of his testimony pertinent to that occurrence is as follows:
“Q Will you tell us what if anything unusual occurred on or about March 29, 1963?
A Well, they were dismantling the old property back of my house for an apartment, and (pause) at around 9:30 or 10:00 o’clock my maid calls me to rush over home that they had pulled a side, the remaining side of the house down and thereby causing dust to go in our living room, I mean the dining room, which at that time the door was open and the dust went in there and accumulated on the rugs and drapes and then I immediately called up my insurance agency who was Hap Lyman at that time, or, still is, and he told me to send them to Russell Qeaners to be cleaned. That’s about the extent that I’m involved.”
In addition to Mr. Hanemann the original plaintiffs produced only one other witness, the manager of the establishment which cleaned the rugs and draperies, who testified only that he had examined the rugs and draperies on the premises, had found them to be very dusty and dirty, and that the cost of taking up, cleaning and putting back those articles had been $223.61. The maid referred to in Mr. Hanemann’s testimony was not called as a witness and no reason was given for plaintiffs’ failure to produce her.
The record contains the testimony of only two other witnesses. One, Mr. Norvell, produced by the original defendants and third party plaintiffs, testified only as to the contract for demolition entered into between the owners of the property being demolished and Deep South. The other witness, the president of Deep South, was produced by that defendant. He testified he had visited the job at least once and sometimes twice each day and that the demolition work had been completed in a workmanlike manner with the standard procedures and equipment customarily used in the industry.
We conclude that the original plaintiffs have failed to carry their burden of proving, by competent evidence, a causal connection between the demolition work on the adjoining property and the damage for which they sue. The only evidence in the record which shows such a connection is the testimony of Mr. Hanemann as to what his maid told him. This is rank hearsay, thoroughly incompetent and undependable, and certainly insufficient to supply proof of the necessary facts. While it is possible the damage was sustained in the manner described, this is speculation and damages cannot be awarded on speculation alone.
As we find no liability to the original plaintiffs by either Norvell and Tabor or Deep South, it is unnecessary to consider the third party demand other than to dismiss that demand.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment on the original demand in favor of the defendants, Harry J. Norvell, Eddie Tabor and Deep South Dismantling Company, Inc., and against the plaintiffs, Louis Hanemann and Transcontinental Insurance Company, rejecting said original plaintiffs’ demand, and that there be judgment on the third party demand in favor of the defendant, Deep South Dismantling Company, Inc., and against the plaintiffs, Harry J. Norvell and Eddie *84 Tabor, rejecting said third party plaintiffs demand; all costs in both courts to be paid by the plaintiffs-appellees, Louis Hanemann and Transcontinental Insurance Company.
Reversed.