Mrs. John S. SCHEXNAYDER, on behalf of herself and all others similarly situated, plaintiffs, et al., Plaintiffs-Appellants.

v.

BUNGE CORPORATION et al., Defendants-Appellees.

No. 73–3311.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1975.

Thomas E. Johnson, John H. Hammel, Jr., Richard A. Hammel, New Orleans, La., for Mrs. Schexnayder.

Patsy Jo McDowell, Arthur Cobb, Baton Rouge, La., for Denham and others.

James H. Drury, New Orleans, La., for Archer and others.

W. K. Christovich, R. K. Christovich, Charles W. Lane, III, New Orleans, La., for Bunge Co. and others.

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

In this Erie-bound diversity suit, tried to a jury, the plaintiffs-appellants are members of eighteen, of the 225 families living in the Gabriel Heights subdivision in Destrehan, Louisiana. The subdivision is bounded by the Bunge grain elevator, built in 1960, the St. Charles grain elevator, built in 1964, railroad tracts, and the Mississippi River. The area is industrialized, and the grain elevators violate no zoning regulations. In September 1970, and again in October 1972, the Bunge elevator exploded when accumulated grain dust ignited.

The plaintiffs sued Bunge Corporation and Archer-Daniels-Midlands Corporation, owners of the elevators, and their insurers, alleging damage to health, property, and enjoyment caused by the operations of the elevators. They complain of respiratory ailments caused or aggravated by grain dust, deprivation of outdoor recreation because of dust clouds and odors from decomposition of the dust when it mixes with water, the need for frequent repainting, the diminished value of their property, their inability to sell their property except at deflated

prices, and their loss of enjoyment caused by the constant noise generated by the dockside loading operations of the plants. In addition, against Bunge alone, they claim damages resulting from the explosions, including broken fixtures, cracked walls and foundations, and worry and anguish.

At the close of a fourteen-day trial, the jury was instructed on the Louisiana law of nuisance, including strict liability for damage under codal articles 667–669, and the law regarding ultrahazardous activities, under article 2315, and was told to decide the issue of liability, with calculation of damages, if any, to follow. The jury found for the defendants.

The plaintiffs assign the following errors: (1) that under Louisiana law there was no question as to the defendants' liability, leaving to the jury only the question of the quantum of damages; (2) that the district court's instructions to the jury were erroneous and confusing; and (3) that a directed verdict or judgment N.O.V. should have been granted. We have considered all the plaintiffs' arguments, and find them without merit. Accordingly, we affirm.

I.

*Strict liability under Louisiana Civil Code Arts. 667–669 and 2315*

The plaintiffs correctly assert that Articles 667–669 [1] and 2315 of the Louisiana Civil Code impose strict liability on the landowners to repair the damage caused to neighboring landowners by their activities. Chaney v. Travelers Ins. Co., La.1971, 259 La. 1, 249 So.2d 181; Devoke v. Yazoo & M.V.R. Co., La.1947, 211 La. 729, 30 So.2d 816; D'Albora v. Tulane University, La.App., 4 Cir. 1973, 274 So.2d 825. Lack of negligence is no defense, but damages must be proved. "An activity . . . which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant." *Chaney*, 249 So.2d at 186. "Perhaps the most usual defense would be that the damage claimed by the plaintiff was not in fact 'damage' under article 667 but was mere 'inconvenience' under article 668, the latter imposing no liability." Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul.L.Rev. 701, 714. The plaintiffs assert that they have proved damage; but the question was for the jury, and the jury disagreed with the plaintiffs.

The Louisiana Supreme Court has held that Articles 667–669 establish a standard of conduct which, when violated, constitutes "fault" under the general tort articles 2315–2316.[2] Specifically,

> La.Civil Code Art. 669. If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

---

1. La.Civil Code Article 667: Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

   La.Civil Code Art. 668. Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

   Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's [neighbors'] house, because this act occasions only an inconvenience, but not a real damage.

2. La.Civil Code Article 2315: Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. . . .

   La.Civil Code Article 2316: Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.

damage resulting from ultra-hazardous activities is compensable without proof of negligence. Langlois v. Allied Chemical Corp., La.1971, 258 La. 1067, 249 So.2d 133. Assuming for the purposes of argument that the storage of grain is ultra-hazardous—this was not proved at trial—damage resulting from the activity must still be shown.[3] The plaintiffs urge that they have demonstrated damage caused by the Bunge explosion. Again this was a jury question; again the jury disagreed with the plaintiffs.

The standard for review of the sufficiency of the evidence to create a jury issue is set out in this Court's en banc opinion in Boeing Co. v. Shipman, 1969, 5 Cir., 411 F.2d 365, 374–375:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

A brief review of the evidence shows that the jury was justified in finding as it did, for reasonable people could come to different conclusions based on conflicting testimony. Each of the plaintiffs' allegations was met with evidence in rebuttal. On the issue of the decline in property values, the defendants showed that few plaintiffs had tried to sell their property or even had the property assessed. The St. Charles Parish Tax Assessor testified that property values fluctuated throughout the parish. A real estate agent testified that failure to sell a house for several months was not unusual. The jury was justified in concluding that no decline in property damage occurred, or that any decline actually occurring was not attributable to the grain elevators. Medical testimony that grain dust caused or aggravated respiratory ailments was far from compelling. The defendants showed at trial that many of the plaintiffs were allergic to common plant and household irritants, and that none of the plaintiffs was allergic to grain dust.

Even under the theory of strict liability, causation must be proved. Eastern

---

**3.** It cannot be said that storage of grain is ultra-hazardous as a matter of law. The plaintiffs argue that because explosions occurred, the activity is ultra-hazardous. This reasoning was rejected by the jury. We cannot say it was clearly wrong. The only activities held to be ultra-hazardous by the appellate courts of Louisiana are the storage of poisonous gas, Langlois v. Allied Chemical Corp., 1971, 258 La. 1067, 249 So.2d 133; pile driving, D'Albora v. Tulane Univ., La.App., 4 Cir. 1973, 274 So.2d 825; crop spraying with insecticides, damaging crops on a neighboring farm, Gotreaux v. Gary, 1957, 232 La. 373, 94 So.2d 293; and purposeful subterranean explosions in connection with oil exploration, Fontenot v. Magnolia Petroleum Corp., 1955, 227 La. 866, 80 So.2d 845.

The trial court properly instructed the jury as to what constitutes an ultra-hazardous activity: "An ultra-hazardous activity is an activity which, even when conducted with the greatest of care and prudence, could cause a foreseeable harm or damage to those in the neighborhood. [examples follow]". See Langlois, 249 So.2d at 139.

Air Lines, Inc. v. American Cyanamid Co., 5 Cir. 1963, 321 F.2d 683; Hanemann v. Deep South Dismantling Co., La.App., 4 Cir. 1966, 185 So.2d 81. With the exception of one $100 estimate, all proof of damage was by the plaintiffs' own testimony. The defendants introduced photographs of the entire area and homes in the subdivision. None showed damage. The jury was not obliged to believe the plaintiffs' testimony, and disbelieve the photographs.

The plaintiffs sought to prove pollution by the expert testimony of Vernon C. Parker, head of the Division of Air Control and Occupational Health for the State of Louisiana. Although he testified that the Division concentrated its efforts on the Destrehan area because many complaints came from there, he also said that the situation steadily improved around the grain elevators. The defendants' own experts produced data tending to show that pollution levels around the Gabriel Heights subdivision were not unusually high, and were not caused by the operations of the plants.

We hold that the evidence was sufficiently in conflict for the case to go to the jury.[4]

## II.

### Jury Instructions.[5]

■■■ The plaintiffs assert that the district court's jury instructions on Loui-

---

**4.** The district judge ruled as follows:

THE COURT: All right, gentlemen. I have given this a lot of thought, and this is a difficult matter to decide. Insofar as the motion for directed verdict and judgment n. o. v., no matter which rule you follow, I believe there is sufficient evidence to warrant my denial of those motions, and I deny the motions. Insofar as the motion for a new trial is concerned, I carefully observed the Jury during the 13 days of trial that we had, and although it was a Jury that was not a highly educated Jury, it is my personal belief from observing them that they were an attentive and intelligent jury, and I think that Counsel for all sides did a fine job in trying the case on the merits. Although I do not agree with the Jury's verdict, the verdict the Jury brought back, nevertheless I think there was a fair trial, and my disagreement with the Jury is not sufficient basis for granting a new trial, and therefore the motion for a new trial is denied.

**5.** To do justice to the trial judge's instructions, it is necessary to quote them at some length. If unbalanced at all, the instructions somewhat favor the plaintiffs. In pertinent part, they read:

Plaintiffs in this matter claim that the operations of the two grain elevators are—the two grain elevators owned by the two defendants in this case constitute what the law terms a nuisance due to the emission of grain dust, noxious odors, noises and other problems which plaintiffs claim in the lowering of their property values, the loss of the enjoyment of their property, and in some cases health problems. The defendants, on the other hand claim that their businesses are lawful and their use of their property is within that latitude which the law allows, and that no dam-

age has been sustained by any plaintiff for which any defendant is liable.

In other words, this case involves a situation in which neighboring property owners are in disagreement as to the limitations on the use of property which can be imposed by one neighbor on another.

That portion of the law which concerns us in this case is contained in the Louisiana Civil Code, various articles of which in essence provide as follows: One is Article 667, which provides in essence "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of damage to him," and Article 668, which states in part "Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor. Thus, he may raise his house as high as he pleases, although by such elevation he should darken the light of his neighbor's house, because this act occasioned only an inconvenience, not a real damage." And Article 669, "If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, their suffrance must be determined by the rules of the police or the customs of the place."

The law of nuisance in Louisiana is based upon common sense and reason. A person has a right to use his property in any way that he sees fit, so long as he does not violate any laws, but he cannot abuse this privilege of using his property as he pleases by damaging his neighbor or by unduly interfering with his neighbor's rights.

siana law were erroneous and confusing. Specifically, they object to the trial judge's charge that the jury must balance the rights and duties of each party. They argue that the legislature has already balanced rights and duties in Articles 667 and 668, that is, *any* damage done to a neighbor is compensable, but mere inconvenience is not.[6] The trial court read the three articles to the jury,

> In determining whether either defendant in this case is liable to any plaintiff, you the Jury, as the triers of fact, must balance the rights and duties of each property owner to his neighbor with the right of the property owner to use his property as he sees fit. There is nothing unlawful in the operation of a grain elevator and associated facilities. The temporary storage of large quantities of grain and the transferring of the same to and from vessels, barges, and railroad cars is a lawful enterprise, and under the law cannot be considered a nuisance merely by reason of its existence. Whether the actual operation of a lawful business becomes an actionable nuisance depends on the facts and circumstances of each particular case.
>
> Such a business may become a nuisance when from the situation, or the manner in which it is conducted, it causes such serious and material injury as to amount to damage to the property of another, interferes with his comfort and enjoyment, injures the health of those living in the vicinity, interferes with their ordinary physical comfort, or causes mental anxiety or suffering, measured by the habits and feelings of ordinary people. In determining whether or not the operations of either or both of the defendants in this case are an actionable nuisance as to any of these plaintiffs, you must consider the locality and the general environment of the neighborhood. You must note that the unavoidable discomforts and annoyances occasioned by the operation of a lawful industrial enterprise are not actionable nuisances; however, they are actionable when they become excessive and unreasonable, taking into account the location of the establishment, its relation to other property and other sources of such annoyances and discomforts.
>
> In arriving at your determination as to whether or not the business of either defendant, Bunge Corporation or St. Charles Grain Elevator, does in fact constitute a nuisance, you may consider, among other things, that the grain elevators owned by defendants are located adjacent to a navigable body of water on which there is a great deal of commerce, in connection with which it can be expected that there will be a certain amount of noise and industrial activity, and that the elevators' construction in this area was not prohibited by any local zoning regulation or other statute, and that a commercial or industrial establishment fronting on a river has a right to use the banks to unload vessels.
>
> In summary, a property owner has the right to do whatever he chooses on his property, even though such use may inconvenience his neighbors, as long as he does not actually damage his neighbor's use of their property. The owner of property has the largest liberty possible in the use, occupation and improvement of his own property, consistent with the right to employ modern methods and machinery. However one may not use his property to the injury of any legal right of another. The landowner is liable for damages resulting from the legal use of his property if that use violates the legal rights of his neighbors.
>
> For liability to arise under the concepts about which I have just instructed you, there is no necessity for finding negligence or fault on the part of one or both of the defendants. You are required only to find that real and actual damage occurred to a plaintiff resulting from the operation of one or both of the grain elevators. This is true irrespective of whether or not the activities resulting in damages, if any, are conducted with reasonable care and in accordance with modern and accepted methods.
>
> It is for you, the Jury, to determine from the evidence in the case whether or not either of the defendants in this case is liable to any of the plaintiffs.
>
> You must determine whether or not there has been any real damage, as opposed to mere inconvenience and annoyance, sustained by any of the plaintiffs. As I have told you, real damage can include such things as interference with comfort and enjoyment, injury to health, or interference with physical or mental comfort, as measured by the habits and feelings of ordinary people.
>
> In making your determination, you must balance the interests of all the parties in accordance with the law which I have just explained to you. You are to consider each of the cases in this action separately, both as to plaintiffs and defendants.

6. When the issue was raised in the district court, the following colloquy ensued:

> THE COURT: Let me ask you this: What might be damages in one case under one given set of circumstances, might that not be mere inconvenience in a case such as this where we have to balance the interests of the plaintiffs against the interest of the defendants?
>
> MR. COBB: I don't think the codal articles made that distinction.
>
> THE COURT: The Codal articles as interpreted by the Courts?
>
> MR. COBB: No, sir, Your Honor, as interpreted by the Courts it says under this article

then proceeded to explain the law. Like the whole of the Louisiana Civil Code, designed as it was to be plain and easily understood by laymen, these articles are eminently readable. Applying them, however, is a more difficult matter. The Louisiana Supreme Court has cautioned that what constitutes damage is "not to be decided by the application of any broad or inflexible rule, but by a careful weighing of all the circumstances". Higgins Oil & Fuel Co. v. Guaranty Oil Co., 1919, 145 La. 233, 245, 82 So. 206, 211.[7] Professor Yiannopoulos, of the Louisiana State University Law School, has recently undertaken an exhaustive analysis of the applicable Code articles and cases, and concluded that they do indeed contemplate a balancing of respective rights and duties. The real distinction between damage and inconvenience, is that "between damage that is compensable and damage that is *damnum absque injuria*". Articles 667 and 668 establish reciprocal rights and duties of neighboring landowners, in accordance with the civilian concept of abuse of right. Article 669 is more like common law nuisance: it proscribes insufferable inconveniences, that is, where the harm suffered outweighs the social utility of the complained-of activity. Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667–69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195, 216–20 (1974).[8] Accurate analysis of a

the obligation of the adjoining property owner not to interfere with his neighbor's adjoining property is unequivocal and absolute, and that is the case of *Lombard,* and it is the fact the activity caused damage to a neighbor which is relevant, and in *Chaney* it remains only to calculate the damage which ensued, and in the *Gullatt,* the *Gullatt* case, it states that liability in this case does not depend upon fault or negligence, but is based upon the doctrine of absolute liability, and has nothing to do with equating about, uh, how important it is to have this industry versue how important it is for these people to suffer the damage.

7. Louisiana cases often speak of a balance of interests. *See, e. g.,* Langlois, 249 So.2d at 140: "The activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations."; Devoke v. Yazoo & M. V. R. Co., 1947, 211 La. 729, 30 So.2d 816; Hilliard v. Shuff, 1971, 260 La. 384, 256 So.2d 127; Robichaux v. Huppenbauer, 1971, 258 La. 139, 245 So.2d 385; Allen v. Albright, La.App., 2 Cir. 1963, 151 So.2d 554. *See also* then-District Judge J. Skelly Wright's jury charge in Eastern Air Lines, Inc. v. American Cyanamid Co., 5 Cir. 1963, 321 F.2d 683, 689.

8. "Demarcation of the line between 'what an owner may do with impunity and what he may not do without incurring liability' on the basis of the distinction between damage and inconvenience might well be an exercise in futility. No legal system has ever compensated neighbors for all damage suffered as a result of works and activities on neighboring property. If all damage were compensable, the prerogatives of ownership would be drastically curtailed.

'Evidently, an owner cannot be debarred from the legitimate use of his property simply because it may cause real damage to his neighbor. It would be contrary to the fundamental legal principle according to which the exercise of a right cannot constitute fault or wrong.' It seems, therefore, that for a proper interpretation and application of articles 667 and 668 distinction ought to be made between damage that is compensable and damage that is *damnum absque injuria.*"

\*　\*　\*　\*　\*　\*

"Broad language in certain Louisiana decisions might be taken to mean that there is no distinction between compensable and noncompensable damage, namely, that any damage inflicted by a landowner upon his neighbors gives rise to a claim for compensation under articles 667 and 668. As a matter of fact, however, all reported cases properly anchoring responsibility without negligence on these articles are cases involving damage caused either by constructions or by ultra-hazardous activities, such as dynamite blasting, aerial spraying of chemicals, and pile driving operations by heavy equipment. No case has been found in which a landowner was held liable without negligence under articles 667 and 668 on account of acts that were not ultrahazardous. Indicatively, although fire spread falls within the strict letter of article 667, Louisiana courts have consistently imposed responsibility for the spread of fire in terms of negligence and fault. Thus, in spite of broad language in decisions, Louisiana jurisprudence as a whole indicates that an owner is responsible under articles 667 and 668 for certain unblameworthy acts only."

"It is submitted that contradictions may be reconciled, the true meaning of articles 667 and 668 may be ascertained, and Loui-

case requires separate consideration of these principles. Louisiana cases, however, and the case before us, mix these elements. It is therefore correct to say that the jury instructions were confusing only insofar as Louisiana law itself is unclear on this point. We think that the district court's instructions, taken as a whole, were an accurate statement of Louisiana law.

 Throughout their brief, and at oral argument, the plaintiffs stress strict liability under the Code. Strict liability is "liability without negligence". Gulf Ins. Co. v. Employers' Assur. Corp., La.App., 4 Cir. 1965, 170 So.2d 125; *see* Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul.L.Rev. 701, 709 (1966). The doctrine, however, does not obviate the need to prove causation and damage.[9]

During the argument before the trial court on post-trial motions, the district judge speculated that the jury probably felt that the plaintiffs had suffered mere inconvenience.[10] He disagreed with the verdict, but expressly stated that he was not shocked by it.[11] Perhaps the plaintiffs would have fared better in Louisiana's courts, whose appellate tribunals enjoy wider authority than this Court to

review findings of fact.[12] We are bound by a federal standard of review of jury verdicts. Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365; *see* Byrd v. Blue Ridge Rural Electric Cooperative, 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. Accordingly, we affirm the jury's verdict.

Affirmed.

---

siana jurisprudence may be explained in the light of the civilian doctrine of abuse of right. Articles 667 and 668 impose responsibility for abuse of the right of ownership."

Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667–69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195, 216–20 (1974) [footnotes omitted].

9. An important consideration in this case was the commercial character of neighborhood. One cannot expect rural tranquility on the banks of the Mississippi River. *See* Ritchey v. Lake Charles Dreding & Towing Co., La. App., 3 Cir. 1970, 230 So.2d 346; Irby v. Panama Ice Co., 1936, 184 La. 1082, 168 So. 306; Monlesun v. Jahnche Drydocks, Inc., 1927, 163 La. 400, 111 So. 886 (re. locating on rivers).

10. MR. COBB: . . . When I tell people that we were in a position of losing the case of absolute liability, where the Judge even told the Jury that due care was not a defense, and that doing the best that you could and the best you can in the industry is not a defense, it is hard to explain how you can lose a case like that. I don't know how to

explain it, how we lost the case, except that something went wrong.

THE COURT: I will tell you what I think happened. I think that from the photographs in evidence, the Jury found their homes looked very nice, and figured that the plaintiffs were being subjected to an inconvenience rather than to damage. I think that is probably the crux of the case.

11. MR. COBB: Frankly, Your Honor, I don't know what happened in the case. I think all of us were surprised. I think Your Honor was surprised. I think the Clerks were surprised, the lawyers were surprised, and the defense lawyers very surprised, but whatever happened, I think something went wrong, and I think that all of us, including Your Honor, were shocked by the verdict of the Jury.

THE COURT: I was not shocked. I disagree with the Jury, but I was not shocked by the verdict.

12. Melancon v. McKeithen, E.D.La.1972, 345 F.Supp. 1025, aff'd, sub nom. Hill v. McKeithen, 1972, 409 U.S. 943, 93 S.Ct. 290, 34 L.Ed.2d 214; Davis v. Edwards, 1972, 409 U.S. 1098, 93 S.Ct. 908, 34 L.Ed.2d 679.